23-10407-467

CAUSE NO. _____

| | | |
|---|---|---|
| **ENRIQUE MORENO** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| **GATOR FLOWER MOUND, LLC, A/K/A** | § | |
| **FLORIDA GATOR FLOWER MOUND, LLC** | § | |
| **Defendant.** | § | **DENTON COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

      **COMES NOW,** Enrique Moreno, Plaintiff herein, and files this his Original Petition against Gator Flower Mound, LLC a/k/a Florida Gator Flower Mound, LLC, Defendant herein, and would respectfully show unto the Court the following:

### I.    **DISCOVERY LEVEL**

      1.    Discovery in this suit is intended to be conducted under Level 2 as defined in Texas Rule of Civil Procedure 190.3.[1]

### II.    **PARTIES AND SERVICE**

      2.    Plaintiff Enrique Moreno (hereinafter "Plaintiff") is an individual residing in Denton County, Texas.

      3.    Defendant Gator Flower Mound, LLC a/k/a Florida Gator Flower Mound, LLC (hereinafter "Defendant"), is a Florida Limited Liability Company and may be served with process by serving its registered agent Corporate Creations Network, Inc. at its registered office located at 5444 Westheimer #1000, Houston, Texas 77056, or wherever Gator Flower Mound, LLC a/k/a Florida Gator Flower Mound, LLC may be found.

---

[1] Including all updates found in the 2021 TEXAS COURT ORDER 0003.

---

### III.    **JURISDICTION AND VENUE**

4.      Jurisdiction of this matter is proper in that the subject matter and the amount in controversy are within the jurisdictional requirements of this Court.

5.      Venue is proper in Denton County, Texas under the mandatory venue rules set forth in Section 15.0115[2] of the Texas Civil Practice and Remedies Code as this is a landlord/ tenant action.   All of the real property is located in Denton County, Texas.

6.      Pursuant to Tex. R. Civ. P. 47(c)(4), Plaintiff affirmatively pleads that this suit is not governed by the expedited-actions provisions of Rule 169 of the Texas Rules of Civil Procedure as Plaintiff seeks monetary relief of over $1,000,000.00.

### IV.   **FACTS**

7.      Plaintiff has extensive experience in creating authentic southern Mexican cuisine, including dishes representative of Michoacán and Oaxaca. At eighteen he began learning his craft from his father and has honed his skills in creating Mexican fusion cuisine over the succeeding 45 years.  He has run successful restaurants and operated successful kitchens in both Merrimack, New Hampshire and Plano, Texas.  He has earned the distinction of being named the top Mexican Chef in New England.[3]   He currently practices his craft of creating superior Mexican fusion dishes at his restaurant, Alma Mexicana in Flower Mound, Texas.

8.      In early 2021, near the height of the global Coronavirus pandemic, Plaintiff recognized that the time was ripe for him to capitalize on his considerable experience and realize a dream of self-sufficiency for his family by creating a new Mexican restaurant specializing in the authentic Southern Mexican cuisine of his youth.

---

[2] Texas Civil Practice and Remedies Code §15.0115 Landlord-Tenant provides that (a) except as provided by another statute prescribing mandatory venue, a suit between a landlord and a tenant arising under a lease shall be brought in the county in which all or a part of the real property is located.

[3] Losprimosmexnh.com, last accessed November 9, 2023, 10:19 A.M.

9.      Plaintiff was looking for a commercial space to create that unique Mexican restaurant and found that Gator Flower Mound had an available bay in the Marketplace at Flower Mound which he believed would meet his needs in creating the restaurant.  The location of the real estate is 2321 Cross Timbers Road, Suite 405, Flower Mound, Texas 75028 (the "Property").

10.     Defendant did not allow Plaintiff an opportunity to inspect the Property as is provided for in the Lease.[4]  Instead, Defendant made representations to the Plaintiff that the Property was a first-class commercial space fitting the needs of Plaintiff for such a space to run his Mexican restaurant business.

11.     Based on the representations of Defendant that the Property was a first-class commercial space fitting the needs of Plaintiff for such a space to run his Mexican restaurant business, Defendant induced Plaintiff to sign the Lease and he did so in reliance on the representations of the Defendant.

12.     On or about April 15, 2021, Plaintiff and Defendant (collectively, the "Parties") entered into a written Shopping Center Lease Agreement (hereinafter, the "Contract") for the Lease of the Property located at 2321 Cross Timbers Road, Suite 405, Flower Mound, Texas 75028 (hereinafter, the "Property).  Under the Contract Plaintiff is the Lessee and Defendant is the Lessor.  Plaintiff attaches a copy of the Lease agreement as Exhibit "A" and incorporates it by reference.

13.     Under the Lease, the Property is intended to be used as a Mexican Restaurant and for no other use or purpose.[5]

---

[4] *See,* Lease, Page 7, Article III, Section 3.02: Premises, Acceptance of Premises.

[5] *See,* Lease, Page 1, Article I(K), Fundamental Lease Provisions, Permitted Use or Purpose.

14.     Plaintiff paid the Security Deposit required by the Lease[6] and began his Tenancy at that time.

15.     Immediately upon taking possession of the Property and beginning his Tenancy, Plaintiff discovered that neither of the two (2) HVAC systems for the Property worked. Plaintiff informed the Defendant's property management agent(s) about both non-functioning HVAC systems, but Defendant did not fix either of the two (2) HVAC systems.

16.     To begin operating his Mexican Restaurant, Plaintiff was forced to repair the HVAC system which serviced the dining room portion of the business. At that time, Plaintiff was informed that the units had been subjected to inadequate/patch repair in the past as was evidenced by the poor welds on the copper piping tubing of the unit. Shortly thereafter, the repaired unit failed completely, and Plaintiff was required to purchase a new HVAC system at a cost of $13,537.31.

17.     To operate, Plaintiff was also forced to purchase additional room/window air conditioning units to serve the support functions of his business and those separate units are in place in 1) the office; and 2) the kitchen.  These units are not sufficient to serve the needs of either 1) the office; or 2) the kitchen.  In the summer, the kitchen temperature routinely exceeds 110 degrees Fahrenheit, posing a protracted, dangerous condition to both the Plaintiff, restaurant kitchen workers, and other restaurant staff.

18.     Shortly after beginning restaurant operations, as required by the Lease, Plaintiff, his staff, and numerous dine-in and take-out customers noticed an offensive sewer gas smell emanating from one or more unknown locations within the Property.  Plaintiff complained repeatedly to the Defendant's property management agents, but neither the Defendant nor its

---

[6] *See,* Lease, Article 5, Section 5.06: Rent, Security Deposit.

agents ever inspected or corrected the smell. Plaintiff has lost both dine-in and take-out customers because of the offensive sewer-gas smell.

19.    Shortly after beginning restaurant operations, as required by the Lease, Plaintiff, his staff, and numerous dine-in and take-out customers noticed that during rain events, the roof above the Property would leak and water drops would percolate down through the roof and rain down throughout the Property, including on customers, tables, the restaurant floor, electrical equipment, restaurant staff, and the Plaintiff.

20.    Plaintiff complained repeatedly to the Defendant's property management agents, but neither the Defendant nor its agents ever inspected or corrected the leaks. Plaintiff has lost both dine-in and take-out customers because of the leaky roof of the Property owned by Defendant.

21.    On several occasions, the significant rainfall percolating through the defective roof of the Property has endangered the customers of Defendant by creating numerous rain puddles on the Property's tile floor to such an extent that Plaintiff has had to close the business to avoid injury to those customer invitees.

22.    Despite the multiple structural defects attributable to the non-existent structural maintenance practices of the Defendant, the Plaintiff threw himself into his work putting his decades long experience creating authentic Southern Mexican cuisine into use and building a consistent, loyal customer base. Plaintiff's Alma Mexicana Restaurante has become a successful operation and a destination worth visiting at the Marketplace at Flower Mound. Plaintiff's talents and concerted efforts have allowed him to create a successful operation with revenue more than $450,000.00 per year with an upward trend.

23.    Recently, and despite the prodigious efforts of the Plaintiff to create the best Southern Mexican cuisine in the DFW Metroplex, Plaintiff has received numerous calls from customers asking whether the sewer gas smell has been eliminated so that they could come in and enjoy the house specialties. Plaintiff, being an honest broker, has had to inform such clients that the smell has not been fully addressed.

24.    But for the non-existent structural maintenance the Defendant has provided, Plaintiff would realize even greater revenue and the further fruition of his American Dream.

## V.    CAUSES OF ACTION

### Count 1 – Breach of Contract – Failure to Supply HVAC from Contract Formation

25.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

26.    Plaintiff and Defendant entered a valid, enforceable Contract as set forth above.

27.    The Plaintiff fully performed, tendered performance, or was excused from performing.

28.    Defendant was expressly required by the Contract to place the existing HVAC systems in good working order pursuant to the Schedule C, Construction: Landlord's Work of the Contract which provides that:

**LANDLORD'S WORK**

Landlord will incorporate in the construction of the Premises at Landlord's cost and expense the following items which shall be substantially completed to enable Tenant's Work to commence:

Place the existing HVAC, bathroom plumbing, and electrical systems in good working order.

29.    Defendant breached the Contract when it failed to provide any working HVAC system to the Property from the beginning of the Plaintiff's tenancy as required by the Contract.

30.    Plaintiff has suffered, and continues to suffer, injury as a result of Defendant's breach of the agreement to complete Landlord's work and begin the Plaintiff's tenancy by putting the HVAC system in good working order. Plaintiff has complained to Defendant and its property management agent(s) about these problems, but Defendant has not addressed any of them.

**Count 2 – Breach of Contract – Failure to Maintain and Repair Property Roof**

31.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

32.    Plaintiff and Defendant entered into a valid, enforceable Contract as set forth above.

33.    The Plaintiff fully performed, tendered performance, or was excused from performing.

34.    Article IX, Section 9.01, and Article XVI, Section 16.01 of the Lease provide further delineation of the Landlord's obligations under the Lease:

> Section 9.01    Maintenance and Repairs by Landlord.   Landlord covenants to keep the following in good order, repair and condition:  (i) the structure of the Shopping Center, including all of the exterior walls, structural columns, beams, joists, footings and stem walls and roofs; (ii) the mechanical, electrical, and other base building systems (except such as may be installed by or be the property of Tenant

> **CONTROL OF SHOPPING CENTER BY LANDLORD**
>
> Section 16.01    Use and Maintenance of Common Areas.  Tenant and those doing business with Tenant for purposes associated with Tenant's business on the Premises, shall have a non-exclusive right to use the Common Areas for their intended purposes during normal business hours in common with others entitled thereto and subject to any rules and regulations imposed by Landlord.  Landlord shall keep the Common Areas in good repair and condition and shall clean the Common Areas when necessary.  Tenant

35.    Defendant Landlord was obligated to keep the in good order, repair, and condition the structure of the Property, including the roof.

36.    Defendant breached its express obligation to keep in good order, repair, and condition the structure of the Property, including the roof.

37.    Plaintiff has suffered injury in the failure of Defendant to maintain the structure of the Property, including the roof as rain has percolated through the failing roof, throughout the Property, on restaurant customers, on Plaintiff's staff, on electrical equipment, and on the Plaintiff.  Plaintiff has complained to Defendant and its property management agent(s) about these problems, but Defendant has not addressed any of them.

38.    Plaintiff has lost valuable business as customers have come into the restaurant, observed the water percolating from the roof of the Property and through the ceiling into the interior, and abruptly turned around to avoid the dine in experience.

39.    Plaintiff has been injured by Defendant's failures to comply with the terms of the Contract as set forth above and seeks recovery of his damages as plead for herein.

**Count 3 – Breach of Contract – Failure to Maintain and Repair Property**

40.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

41.    Plaintiff and Defendant entered into a valid, enforceable Contract as set forth above.

42.    The Plaintiff fully performed, tendered performance, or was excused from performing.

43.    Article IX, Section 9.01 and Article XVI, Section 16.01 of the Lease provide further delineation of the Landlord's obligations under the Lease:

Section 9.01    Maintenance and Repairs by Landlord.    Landlord covenants to keep the following in good order, repair and condition: (i) the structure of the Shopping Center, including all of the exterior walls, structural columns, beams, joists, footings and stem walls and roofs; (ii) the mechanical, electrical, and other base building systems (except such as may be installed by or be the property of Tenant

### CONTROL OF SHOPPING CENTER BY LANDLORD

Section 16.01    Use and Maintenance of Common Areas.    Tenant and those doing business with Tenant for purposes associated with Tenant's business on the Premises, shall have a non-exclusive right to use the Common Areas for their intended purposes during normal business hours in common with others entitled thereto and subject to any rules and regulations imposed by Landlord.  Landlord shall keep the Common Areas in good repair and condition and shall clean the Common Areas when necessary.  Tenant

44.     Defendant Landlord was obligated to keep in good order, repair, and condition the structure of the Property, including the "other base building systems."  The plumbing embedded into the structure of the Property is integral to the operation of the business and the Defendant has zero control over its care or maintenance.

45.     Defendant breached its express obligation to keep in good order, repair, and condition the structure of the Property, including the "other base building systems."

46.     Plaintiff has suffered injury in the failure of Defendant to maintain the structure of the Property, including the "other base building systems" as a persistent sewer gas smell has permeated the Property, and other units within the Marketplace at Flower Mound, all units owned and operated by Defendant.

47.     Plaintiff has complained to Defendant and its property management agent(s) about these problems, but Defendant has not addressed any of them.

48.     Plaintiff has lost valuable business as customers have come into the restaurant, taken seats at either a table or the bar, and, shortly after arriving observed the persistent sewer gas smell and have abruptly cut short their visit to the restaurant to avoid the dine-in experience.

49.     Plaintiff has been injured by Defendant's failures to comply with the terms of the Contract as set forth above and seeks recovery of his damages as pleaded for herein.

**Count 4 – Violation of the Deceptive Trade Practices Act**

50.     Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

51.     Plaintiff is a business consumer under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiff is an individual (as defined by the Act) who acquired goods/services by purchase. See Tex. Bus. & Com. Code §17.45(4).

52.     Defendant violated Section 17.46 of the DTPA by engaging in false, misleading, or deceptive acts or practices that the Plaintiff relied on to his detriment by:

    a.    Engaging in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. See Tex. Bus. & Com. Code §17.46(a);

    b.    Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. See Tex. Bus. & Com. Code §17.46(b)(2);

    c.    Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which it does not. See Tex. Bus. & Com. Code §17.46(b)(5);

    d.    Representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand. See Tex. Bus. & Com. Code §17.46(b)(6);

    e.    Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. See Tex. Bus. & Com. Code §17.46(b)(7);

    f.    Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which is prohibited by law. See Tex. Bus. & Com. Code §17.46(b)(12);

    g.    Representing by knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service. See Tex. Bus. & Com. Code §17.46(b)(13);

h. Representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced. See Tex. Bus. & Com. Code §17.46(b)(22); and

i. Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. See Tex. Bus. & Com. Code §17.46(b)(24).

53. Due to Defendant's conduct, Plaintiff may maintain an action pursuant to Section 17.50 of the Deceptive Trade Practices Act.

54. Defendant engaged in one or more false, misleading, or deceptive acts or practices that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of the Texas Deceptive Trade Practices Act, and the Plaintiff relied, to his detriment, on those representations by entering into the Contract and fully performing his obligations.

55. Plaintiff has been injured by Defendant's actions, and those actions have been producing causes of economic damages and mental anguish damages.

56. Defendant breached one or more express or implied warranties regarding the suitability and habitability of the work performed by Defendant at the Property. See Tex. Bus. & Com. Code §17.50(a)(2), and Plaintiff has been injured by Defendant's breach.

57. Defendant engaged in unconscionable actions or courses of action relating to the construction and renovation work on the Property. See Tex. Bus. & Com. Code §17.50(b)(3).

58. The acts and practices of Defendant were unconscionable such that, to the Plaintiff's detriment, it took advantage of the Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. As a result, the Plaintiff suffered damage. Tex. Bus. & Com. Code §17.50(a)(3).

59. Because Defendant acted knowingly and intentionally, Plaintiff is entitled to recover treble damages under DTPA Section 17.50(b)(1). Defendant acted knowingly because at the time of the acts and practices complained of Defendant had actual awareness of the falsity, deception, or unfairness of the acts or practices giving rise to Plaintiff's claims. See Tex. Bus. & Com. Code §17.45(9).

60. Defendant acted intentionally because at the time of the acts and practices complained of Defendant had actual awareness of the falsity, deception, or unfairness of the act or practice and acted with a specific intent that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness. See Tex. Bus. & Com. Code §17.45(13).

61. Defendant's acts, practices and/or omissions as set forth above were relied upon by the Plaintiff, to his detriment, and were the producing cause of the Plaintiff's damages.

**<u>Count 5 – Breach of Common Law Implied Warranty of Suitability (HVAC)</u>**

62. Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

63. Plaintiff leased commercial property located at 2321 Cross Timbers Road, Suite 405 a/k/a Bay 6, Flower Mound, Denton County, Texas 75028, from Defendant pursuant to the Contract.

64. Plaintiff discovered a latent defect in the leased Property shortly after beginning his tenancy. The latent defect was that the HVAC system supplying air conditioning and heating to the Property did not function. The HVAC systems had been represented as working at the time when Plaintiff was induced to sign the Contract. Defendant was required to place the

HVAC systems in good working order under the lease as these are specifically addressed in the "Landlord's Work" section of Schedule "C", Construction.

65. The HVAC system is an area covered by the Contract and is vital to the Property's commercial purpose, which is the operation of a Mexican restaurant in North Texas.

66. The defect made the Property unsuitable for its intended commercial purpose, which was a breach of the implied warranty of suitability. Outside air temperatures in the three months prior to the filing of this Petition have exceeded one hundred degrees Fahrenheit for eighty of those days. The heat from the operation of the Mexican restaurant required under the lease routinely elevates the air temperature in the kitchen to well over one hundred ten degrees, posing a significant risk to the health of the restaurant staff, kitchen workers, and the Plaintiff. The Defendant's failure to put the HVAC systems in good working order at the time Plaintiff entered the lease constitutes a defect which has made the Property unsuitable for its intended purpose.

67. Defendant had a duty to repair the defect but did not repair it. Defendant had been informed on multiple occasions that the HVAC systems had not worked from the beginning of the tenancy, but Defendant refused then, and continues to refuse now, to put the HVAC systems in good working order.

68. Defendant's breach of warranty directly and proximately caused injury to Plaintiff, which resulted in the following damages: heat induced health damages to Plaintiff, lost customers, and lost profits.

69. Plaintiff seeks damages within the jurisdictional limits of this Court.

70. Plaintiff seeks rescission of the Contract for Defendant's actions.

**Count 6 – Breach of Common Law Implied Warranty of Suitability (Leaking Roof)**

71.     Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

72.     Plaintiff leased commercial property located at 2321 Cross Timbers Road, Suite 405 a/k/a Bay 6, Flower Mound, Denton County, Texas 75028, from Defendant pursuant to the Contract.

73.     Plaintiff discovered a latent defect in the leased Property shortly after beginning his tenancy at the Property. On February 22, 2022, Plaintiff discovered that the roof over the Property leaked and allowed water to percolate through the exterior surface into the building envelope, through the ceiling, and into the interior of the restaurant. The latent defect was that the roof above the Property did not function to keep out the elements. Plaintiff was not aware of any defect in the roof at the time when Plaintiff was inspecting the Property. Defendant was, and is, required to keep the Property structure, including the roof, in good order, repair and condition, and these obligations are specifically addressed in the Contract.

> **Section 9.01     Maintenance and Repairs by Landlord.**  Landlord covenants to keep the following in good order, repair and condition: (i) the structure of the Shopping Center, including all of the exterior walls, structural columns, beams, joists, footings and stem walls and roofs; (ii) the mechanical, electrical, and other base building systems (except such as may be installed by or be the property of Tenant

> **CONTROL OF SHOPPING CENTER BY LANDLORD**
>
> **Section 16.01     Use and Maintenance of Common Areas.**  Tenant and those doing business with Tenant for purposes associated with Tenant's business on the Premises, shall have a non-exclusive right to use the Common Areas for their intended purposes during normal business hours in common with others entitled thereto and subject to any rules and regulations imposed by Landlord.  Landlord shall keep the Common Areas in good repair and condition and shall clean the Common Areas when necessary.  Tenant

74.     The roof is an area covered by the Contract and is vital to the Property's commercial purpose, which is the operation of a Mexican restaurant in North Texas.

75. The defect made the Property unsuitable for its intended commercial purpose, which was a breach of the implied warranty of suitability. Significant rain events outside of the Property have routinely led to rain percolating through the roof of the Property. Rain from the leaking roof falling on the customers, floors, staff, and equipment of the Plaintiff's Mexican restaurant, routinely results in unhappy customers, lost customers, lost business, angry staff, and the potential for the rain to fall into the food operations of the business, all posing a significant risk to the health of the restaurant staff, kitchen workers, the Plaintiff, and the reputation of the business. The Defendant's failure to keep the roof in good order, repair, and condition, constitutes a defect which has made the Property unsuitable for its intended purpose.

76. Defendant had a duty to repair the defect but did not repair it. Defendant had been informed on multiple occasions that the roof leaks and allows water to percolate through that surface and into the interior of the Property with negative effects on customers, operations, interior surfaces, and staff, but Defendant refused then, and continues to refuse now, to fix the leaking roof and maintain the structure, in good order, repair, and condition.

77. Defendant's breach of warranty directly and proximately caused injury to Plaintiff, which resulted in the following damages: angry customers, angry staff, lost customers, and lost profits.

78. Plaintiff seeks damages within the jurisdictional limits of this Court.

79. Plaintiff seeks rescission of the Contract for Defendant's actions.

## Count 7 – Breach of Common Law Implied Warranty of Suitability (Other Systems)

80. Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

81.     Plaintiff leased commercial property located at 2321 Cross Timbers Road, Suite 405 a/k/a Bay 6, Flower Mound, Denton County, Texas 75028, from Defendant pursuant to the Contract.

82.     Plaintiff discovered a latent defect in the leased Property shortly after beginning his tenancy. The latent defect was that the Property becomes permeated with a foul smell of sewer gas. The other base building systems which the Plaintiff is required to keep in good repair do not function to keep the offensive sewer gas smell out of the Property. Plaintiff was not aware of any defect in the other base building systems of the Property at the time when Plaintiff was induced to sign the Contract and begin his tenancy. Defendant was, and is, required to keep the Property other base building systems, in good order, repair and condition, and these obligations are specifically addressed in the Contract.

> **Section 9.01    Maintenance and Repairs by Landlord.** Landlord covenants to keep the following in good order, repair and condition: (i) the structure of the Shopping Center, including all of the exterior walls, structural columns, beams, joists, footings and stem walls and roofs; (ii) the mechanical, electrical, and other base building systems (except such as may be installed by or be the property of Tenant

> **CONTROL OF SHOPPING CENTER BY LANDLORD**
>
> **Section 16.01    Use and Maintenance of Common Areas.** Tenant and those doing business with Tenant for purposes associated with Tenant's business on the Premises, shall have a non-exclusive right to use the Common Areas for their intended purposes during normal business hours in common with others entitled thereto and subject to any rules and regulations imposed by Landlord. Landlord shall keep the Common Areas in good repair and condition and shall clean the Common Areas when necessary. Tenant

83.     The other base building systems is an area covered by the Contract and is vital to the Property's commercial purpose, which is the operation of a Mexican restaurant in North Texas.

84.     The defect made the Property unsuitable for its intended commercial purpose, which was a breach of the implied warranty of suitability. Numerous instances of sewer gas smell permeating the interior of the Property have routinely led to an inability to attract dine-in

customers, frequent table turn over as dine-in patrons cut their visit short, an inability to attract bar patrons, and a frequent departure of bar patrons, are all attributable to the Defendant's failure to maintain the other base building systems that Defendant is responsible to keep in good working order under the Contract. The problem has persisted over time even though Defendant and his agents have been informed of the problems.

85.    The defects attributable to the Defendant's breach of the implied warranty of suitability have also resulted in damage to the reputation of the business.

86.    The Defendant's failure to keep the other base building systems in good order, repair, and condition, constitutes a defect which has made the Property unsuitable for its intended purpose.

87.    Defendant had a duty to repair the defect but did not repair it. Defendant had been informed on multiple occasions that the sewer gas smell permeates the Property with negative effects on customers, operations, restaurant staff, and the Plaintiff, but Defendant refused then, and continues to refuse now, to fix the other base building systems and maintain the structure in good order, repair, and condition.

88.    Defendant's breach of warranty directly and proximately caused injury to Plaintiff, which resulted in the following damages: lost customers, business, and lost profits.

89.    Plaintiff seeks damages within the jurisdictional limits of this Court.

90.    Plaintiff seeks rescission of the Contract for Defendant's actions.

**Count 8 – Negligence**

91.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

92.     Defendant had a duty to use ordinary care to make safe or warn about any concealed, unreasonably dangerous condition that it was aware of on the Property, or reasonably should have been aware of and the Plaintiff was not.

93.     Defendant's duty included warning the Plaintiff about the existence of the leaking roof above the demised premises. Defendant breached the duty by failing to warn Plaintiff about the existence of the leaking roof.

94.     Defendant's duty also included warning Plaintiff about the existence of sewer gas and other bad smells which had historically impacted operations and customer experiences at the rented space prior to the start of the Plaintiff's tenancy.[7]  Defendant breached the duty by failing to warn Plaintiff about the existence of sewer gas and other bad smells.

95.     Plaintiff suffered damages proximately caused by Defendant's negligence in the form of destroyed computers, lost business, lost profits, and lost customers due to water spilling through the leaking roof and onto operations and customers within the restaurant.

96.     Plaintiff suffered damages proximately caused by Defendant's negligence in the form of lost business, lost profits, and lost customers due to a persistent, foul smelling air permeating restaurant operations and being easily detected by customers within the restaurant.

97.     Plaintiff seeks damages within the jurisdictional limit of the court.

**Count 9 – Negligent Misrepresentation**

98.     Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

---

[7] *See*, generally, Yelp reviews of the prior tenant at the property including one-star reviews specifically referencing bad smells at the property, last accessed November 2, 2023. LE BISTRO BANGKOK - CLOSED - 25 Photos & 80 Reviews - 2321 Cross Timbers Rd, Flower Mound, Texas - Thai - Restaurant Reviews - Phone Number - Yelp.

99.    Defendant and/or Defendant's agents made representations to the Plaintiff that the Property was good and had no issues.

100.    Defendant and/or Defendant's agents made representations to the Plaintiff that the Property was perfect for operating a restaurant and would be an excellent Property to house Plaintiff's Mexican restaurant.

101.    Defendant and/or Defendant's agents made these representations in the course of its business when Plaintiff was looking for a commercial space suitable for operating a Mexican restaurant.

102.    Defendant and/or Defendant's agents made these representations in the course of a transaction in which Defendant had a pecuniary interest, to wit, securing a long-term tenant for its commercial property.

103.    Defendant's misrepresentations were misstatements of fact because Defendant knew that the roof over the Property leaked, the no HVAC system attached to the Property worked, and that there were, historically, foul odors permeating the interior of the Property.

104.    Defendant's misrepresentations were a failure to disclose information when the Defendant had a duty to do so because Defendant had actual knowledge about the leaking roof and that, historically, foul odors permeated the interior of the Property.

105.    Defendant's misrepresentations were a failure to disclose information when Defendant had a duty to do so because Defendant knew that Plaintiff intended to operate a Mexican restaurant whose primary purpose was serving authentic Mexican food to the general public.

106.     Plaintiff actually and justifiably relied on Defendant's representation when Plaintiff signed a long-term Contract for the rental of the subject Property and bound himself to perform under the terms of the Contract.

107.     Defendant's misrepresentation proximately caused injury to Plaintiff, which resulted in the damages for which Plaintiff now sues.

108.     Plaintiff seeks damages within the jurisdictional limits of the court.

## Count 10 – Common Law Fraud

109.     Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

110.     Defendant and/or its agents represented to Plaintiff that the Property would be a good property for Plaintiff's Mexican restaurant to begin operations selling food to the general public.

111.     Defendant's representations to Plaintiff were material because Plaintiff was seeking a commercial space for a long-term lease to operate a Mexican restaurant and would not have entered into the Contract without assurances that the Property was a good Property to house the business.

112.     Defendant's representations of fact were a false statement of fact because the HVAC systems did not work, because the roof leaked, and because the Property had historically been assailed by foul smells emanating from outside of the Property.

113.     Defendant knew about the broken HVAC systems, the leaking roof, and that the Property had historically been subjected to being permeated with foul smells because Defendant owned the Property.

114.    Alternatively, Defendant made the false representations recklessly, as a positive assertion, and without knowledge of the truth because Defendant did not investigate the complaints of prior tenants in the Property about the foul smell which permeated the Property.

115.    Defendant intended for Plaintiff to rely on the false representations because it needed a tenant for the then empty commercial space.

116.    Plaintiff justifiably relied on Defendant's false representations when he signed a long-term lease for the use of the Property as a Mexican restaurant and for no other purpose.

117.    Defendant's false representations directly and proximately caused injury to Plaintiff which resulted in damages.

118.    Plaintiff seeks damages within the jurisdictional limits of this Court.

## Count 11 – Fraud in the Inducement

119    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

120.    Defendant and/or its agents represented to Plaintiff that the Property would be a good Property for Plaintiff's Mexican restaurant to begin operations selling food to the general public.

121.    Defendant's representations to Plaintiff were material because Plaintiff was seeking a commercial space for a long-term lease to operate a Mexican restaurant and would not have entered into the Contract without assurances that the Property was a good Property to house the business.

122.    Defendant's representations of fact were a false statement of fact because the HVAC systems did not work, because the roof leaked, and because the Property had historically been assailed by foul smells emanating from outside of the Property.

123.   Defendant knew about the broken HVAC systems, the leaking roof, and that the Property had historically been subjected to being permeated with foul smells because Defendant owned the Property.

124.   Alternatively, Defendant made the false representations recklessly, as a positive assertion, and without knowledge of the truth because Defendant did not investigate the complaints of prior tenants in the Property.

125.   Defendant intended for Plaintiff to rely on the false representations because it needed a tenant for the then empty commercial space.

126.   Plaintiff justifiably relied on Defendant's false representations when he signed a long-term lease for the use of the Property as a Mexican restaurant and for no other purpose.

127.   Defendant's false representations directly and proximately caused injury to Plaintiff which resulted in damages.

128.   Plaintiff seeks damages within the jurisdictional limits of this Court.

**Count 12 – Statutory Fraud**

129.   Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

130.   Plaintiff and Defendant were Parties to a transaction involving real estate as Defendant is the owner of commercial property and Plaintiff is the tenant under a written commercial lease agreement.

131.   Leading up to the entry of the Parties into the Contract, the Defendant made representations of material fact about the quality of the Property to Plaintiff.

132.   Defendant made the representation for the purpose of inducing Plaintiff to enter into the lease Contract.

133.    Plaintiff justifiably relied on Defendant's false representation because he needed a quality commercial space within which to operate a Mexican restaurant.

134.    Defendant's false representation proximately caused injury to Plaintiff which resulted in damages.

135.    Plaintiff seeks damages within the jurisdictional limits of this Court.

## VI.    CONDITIONS PRECEDENT

136.    All conditions precedent to Plaintiff's recovery have been performed, have occurred, have been waived, or are excused.

## VII.    ATTORNEY'S FEES

137.    Plaintiff incorporates herein by reference all facts and allegations set forth above as if said allegations were fully set forth herein.

138.    Plaintiff has retained the firm of Dankesreiter & Emmet, L.L.P. to represent him in this action and has agreed to pay the firm reasonable and necessary attorney's fees. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just. An award of reasonable and necessary attorney's fees to Plaintiff would be equitable and just and authorized by Chapter 38.001(8) of the Texas Civil Practice & Remedies Code.

## VIII.    PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiff Enrique Moreno respectfully prays that Defendant Gator Flower Mound, LLC a/k/a Florida Gator Flower Mound, LLC be cited to appear and answer herein, and that upon a final hearing for the cause, judgment be entered for the Plaintiff against Defendant as follows:

a.  Rescission of the Contract;

b.  An Order to restore money acquired by Defendant from Plaintiff for violations of the Texas Deceptive Trade Practices Act;

c.  An award of mental anguish damages to Plaintiff for Defendant's violations of the Texas Deceptive Trade Practices Act;

d.  An award of actual damages to Plaintiff as described herein;

e.  An award of benefit-of-the-bargain damages to Plaintiff;

f.  An award of economic damages to Plaintiff;

g.  An award of lost profits to Plaintiff;

h.  Plaintiff be awarded his reasonable and necessary attorney's fees, with additional contingent amounts in the event of appellate proceedings;

i.  Plaintiff be awarded prejudgment and post judgment interest at the highest legal or contractual rate allowed by law;

j.  Plaintiff be awarded all costs of court; and

k.  The Court grant Plaintiff all further relief to which Plaintiff may be entitled in law or in equity.

Respectfully submitted,

**DANKESREITER & EMMET, L.L.P.**

By: _____
Eric F. Dankesreiter
State Bar No. 00796434
eric@texasbuslaw.com
Sean Moloney
State Bar No. 24122831
sean@texasbuslaw.com
3010 Broadmoor Lane
Flower Mound, Texas 75022
(972) 691-3677
(972) 691-5688 – facsimile

*Attorneys for Plaintiff*